**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **KERRY PIERRE** | **CASE NO. 1:26-CV-01985 SEC P** |
| **VERSUS** | **JUDGE JERRY EDWARDS** |
| **U.S. DEPT. OF HOMELAND SECURITY, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of habeas corpus filed by Petitioner, Kerry Pierre, on June 11, 2026. Doc. 1. The Government filed a response on September 22, 2026. Doc. 15. The Petitioner filed a Reply. Doc. 16. The matter is ripe for review. For the reasons that follow, **IT IS RECOMMENDED** that this habeas corpus action be **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Haiti. *See* Declaration of Acting Assistant Field Office Director, doc. 15-1, ¶ 4. An immigration judge ordered the Petitioner removed from the United States on April 17, 2013, but granted relief in the form of deferral of removal to Haiti under the Convention Against Torture. *Id.* at ¶ 5; *see also* Order of Immigration Judge dated 4/17/13, doc. 15-2. Petitioner's Order of Removal became final on August 28, 2013, when the Department of Homeland Security ("DHS") withdrew its appeal to the Board of Immigration Appeals (BIA). *See* doc. 15-1, ¶ 5. On July 17, 2013, the Petitioner was released from U.S. Immigration and Customs Enforcement ("ICE") custody under an order of supervision ("OSUP"). *Id.* at ¶ 6.

On November 19, 2025, the Petitioner was transferred into ICE custody from the Florida Department of Corrections after having been convicted of "burglary of an unoccupied conveyance". *Id.* at ¶ 7. On March 5, 2026, a Notice of Removal to Mexico was served on the

Petitioner, who refused to sign. *Id*. at ¶ 8. On May 18, 2026, ICE-Enforcement Removal Operations ("ICE-ERO") elevated the matter to DHS Headquarters to assist with third country removal from the United States. *Id*. at ¶ 9. On July 29, 2026, Petitioner was served with a warning for failure to depart from the United States. *Id*. at ¶ 11. On August 4, 2026, Petitioner was served a second time with a Notice of Removal to Mexico and the Petitioner again refused to sign. *Id*. at ¶ 12; *see also* Notice of Removal, doc. 15-3.

Petitioner has now been in post-removal-order detention for approximately eleven months. He argues that his continued detention violates § 1231(a)(6), as interpreted by *Zadvydas*, because his removal is not reasonably foreseeable; the sole barrier to his deportation is his refusal to consent to removal to Mexico. Under *Zadvydas* and the regulations implementing it, Petitioner asks the Court to order his immediate release under conditions of supervision.

## II. LAW AND ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the extension and application of that decision by *Clark v. Martinez,* 543 U.S. 371 (2005), to aliens who are inadmissible, the United States Supreme Court adopted a six-month period for which the institutional detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the

> circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700.

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The United States Fifth Circuit Court of Appeals has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also, Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, to state a claim for relief under the *Zadvydas* decision an alien must establish: 1) post-removal-order detention in excess of six months at the time of the filing of his or her petition; and 2) good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*; *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). To shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation"

to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* If the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1052.

***A. Length of Detention***

An alien's post-removal-order detention under 8 U.S.C. § 1231 is limited to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas,* 533 U.S. at 689. The Supreme Court has found that once the removal period begins, six months is a reasonably necessary period to remove the alien. *See id*. at 701. After six months, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id*. Petitioner's Order of Removal became final on August 28, 2013. *See* doc. 15-1, ¶ 5. He was re-detained on December 15, 2025. *Id*. at ¶ 5. The presumptively reasonable removal period ended long ago—his detention has extended well beyond six months, and the presumption of reasonableness recognized in *Zadvydas* no longer applies. *See Shengelia v. Ortega*, No. 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); *Altayb v. U.S. Immigr. & Customs Enf't,* No. 1:25-CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), *adopted by*, 2026 WL 544292 (W.D. La. Feb. 26, 2026).

The length of that confinement matters to the standard itself. As the period of post-removal detention grows, what counts as the reasonably foreseeable future correspondingly shrinks. *Zadvydas*, 533 U.S. at 701.

***B. Petitioner's Initial Burden***

The Court must next address whether Petitioner has established that there is no significant likelihood of removal in the reasonably foreseeable future. This inquiry is practical and record-

specific, and it hinges upon the real likelihood that removal will occur in the future, not upon the Government's past efforts or present intentions to remove a non-citizen detainee.

Petitioner provides good reason to believe that there is no significant likelihood of his removal in the foreseeable future. The record establishes that Petitioner is a native and citizen of Haiti and that he has been granted relief in the form of deferral of removal to Haiti under the Convention Against Torture. *See* doc. 15-1. He also identifies an insurmountable barrier to the only alternative destination the Government has named: Mexico. He relies upon current jurisprudence that establishes that "Mexico will only accept third country nationals if they consent to removal to Mexico" (*Lambert v. Warden*, No. 26-CV00427, 2026 WL 926216, at *2 (W.D. Tex. Apr. 6, 2026)). Moreover, he points to the Government's representations in a habeas proceeding in the Middle District of Louisiana that "the Mexican government is declining to accept removals of third-country individuals who are refusing to go voluntarily." *See* transcript of oral argument in *Vergara v. U.S. ICE, et al*, No. 3:26-2-1-SDD (M.D. La. April 28, 2026, doc. 16-1, p. 17, lines 18-24).

Petitioner did not consent to be removed to Mexico—a country that has never signaled any willingness to accept his removal in any case. Absent a receiving third country's assent, courts are routinely unwilling to find that removal is likely. *See Mendoza Martinez v. Parra*, No. 26-CV24255, 2026 WL 2318024, at *5–6 (S.D. Fla. Aug. 11, 2026) (finding petitioner entitled to release where "Respondents have made no attempt to show that Mexico has agreed to accept Petitioner or that it will likely do so soon"); *Cepero-Llanes v. Noem,* No. CV 26-0476, 2026 WL 2453382, at *5–6 (W.D. La. Aug. 3, 2026) (report and recommendation) (requiring proof that Mexico agreed to accept the detainee before treating refusal of removal as noncooperation).

Under these circumstances, the Court cannot conclude that Petitioner's removal to Mexico is significantly likely in the reasonably foreseeable future. *See Sanchez v. Bondi,* No. C25-2573-KKE, 2026 WL 160882, at *3-4 (W.D. Wash. Jan. 21, 2026) (similar evidence "cast doubt on Respondents' ability to remove" the petitioner to Mexico). By contrast, as detailed below, the record supports the opposite conclusion: that no realistic prospect of removal exists.

***C. Respondents' Burden***

The burden thus shifts to Respondents, *Zadvydas*, 533 U.S. at 701, who provide no evidence to rebut Petitioner's claim.

The conclusory statements made by the Acting Field Office Director that "removal will depend on Petitioner's compliance with removal efforts" and that he believes ICE will be able to remove petitioner in the reasonably foreseeable future, fall short. *See Rodriguez Romero v. Ladwig*, 2026 WL 321437, at *16 (M.D. La. Feb. 6, 2026) (stating that generalized "ongoing efforts to deport" to a third country are insufficient under *Zadvydas* to justify ongoing detention); *Uriostegui Rios v. Trump*, 2026 WL 810556 at *2 (W.D. La. March 24, 2026) (finding the government failed to meet its burden where "despite many requests, no country has agreed to accept [p]etitioner"); *Nuraetov v. Bondi,* No. 1:25-CV-1740, 2026 WL 878740, at *2 (W.D. La. Mar. 13, 2026) (finding that the government failed to meet its burden when there was "no affidavit, declaration, or other evidence that a third country has been identified, contacted, or is considering a request from the Government to accept this petitioner and issue travel documents for his removal"), *report and recommendation adopted*, doc. 7 (W.D. La. Mar. 30, 2026); *Nguyen v. Bondi*, No. EP-25-CV-323-KC, 2025 WL 3120516, at *7 (W.D. Tex. Nov. 7, 2025) (requiring individualized evidence about the specific petitioner to demonstrate foreseeability of removal); *Marquez-Amaya v. Thompson*, No. 5:25-cv-1501, 2025 WL 3654327, at *6 (W.D. Tex. Dec. 15,

2025) (granting release where petitioner was "pending approval for removal to Mexico" with no specific removal plan in place); *Gomez-Simeon v. Bondi*, No. 25-cv-1460, 2025 WL 3470872, at *1, *5 (W.D. Tex. Nov. 24, 2025) (granting release where "Respondents have not identified a country willing to accept" the petitioner, who won CAT and finding detention not justified in the absence of "a removal plan"). The government has not met its burden.

Moreover, while Respondent's effort to remove Petitioner to Mexico, pursuant to 8 U.S.C. § 1231(b)(2), is permissible, statutory authority is not proof of likelihood. It supplies at least some context. But the controlling question remains whether the record at issue indicates that a petitioner's removal is actually likely. *See Puertas-Mendoza v. Bondi,* No. SA25-CA-00890-XR, 2025 WL 3142089, at *3–*4 (W.D. Tex. Oct. 22, 2025).

This record contains no evidence that removal to Mexico is, or ever was, likely to occur. Again, the Williams Declaration states only that ICE served Petitioner with a Notice of Removal to Mexico on March 5, 2026, for which he refused to sign. Doc. 15-1, ¶ 8. Despite elevating the matter to Headquarters to assist with third country removal, he was only served a second time with a Notice of Removal to Mexico on August 4, 2026. *Id.* at ¶ 12. It also states that ERO continues to pursue Petitioner's removal to a third country and *believes* it will be able to do so in the reasonably foreseeable future. *Id.* at ¶ ¶ 13, 14. It does not, however, state or otherwise prove that Mexico would accept Petitioner if removed. Mexico has not issued a travel authorization, a diplomatic clearance, or any other indication of assent. That evidentiary gap is always material, and often decisive. Other courts have found similar ICE declarations insufficient when merely reciting the mechanics of third-country removal or relaying an officer's unsupported belief that a receiving country may ultimately assent. *See, e.g., Rodriguez-Ramos v. Warden, Baker Cnty. Det. Ctr.*, No. 3:26-CV-658-JEP-LLL, 2026 WL 1091016, at *3 (M.D. Fla. Apr. 22, 2026) (declaration

described the general process and gave no timeline or indication of Mexico's final acceptance); *Valdes-Oviedo v. Immigr. & Customs Enf't Field Off. Dir.,* No. C25-2720-KKE, 2026 WL 353266, at *3 (W.D. Wash. Feb. 9, 2026) (single unsubstantiated statement of ICE's belief about Mexico insufficient); *Villanueva v. Tate,* 801 F. Supp. 3d 689 (S.D. Tex. 2025) (generalized assertions, unaccompanied by any identified receiving country or changed circumstance, do not make removal reasonably foreseeable).

At most, this record shows that ICE intended to pursue Mexico and took steps toward that objective. That showing falls well short of the mark. As stated above, the presumption of reasonableness no longer applies to Petitioner's detention. *See Shengelia v. Ortega, 5*:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); *see also Altayb v. U.S. Immigration & Customs Enf't,* 1:25- CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), *adopted by*, 2026 WL 544292 (W.D. La. Feb. 26, 2026). The Government has failed to produce evidence of a significant likelihood that Petitioner will be deported in the reasonably foreseeable future[1].

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to address any other claim or challenge.

[1] Moreover, any suggestion by the Government that continued detention remains lawful because Petitioner has "refused to comply with third country removal" is hollow. A noncitizen does not "act to prevent" removal under 8 U.S.C. § 1231(a)(1)(C) by declining to consent to removal to an unwilling third country—including where that country's acceptance is conditioned upon the noncitizen's consent. *See, e.g., Domínguez Fernández v. Acuna*, No. CV 26-375-SDD-RLB, 2026 WL 2546662, at *5 (M.D. La. Aug. 27, 2026) (declining to recast a Cuban petitioner's refusal to cross into Mexico as a failure to cooperate with removal); *accord Cepero-Llanes v. Noem*, No. CV 26-0476, 2026 WL 2453382, at *5–6 (W.D. La. Aug. 3, 2026) (report and recommendation) (rejecting the Government's unsupported assertion that the petitioner's refusal of removal to Mexico constituted noncooperation, where the record contained no evidence that Mexico had agreed to accept him).

## III. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be **RELEASED**, subject to supervision under regulations prescribed by the Attorney General.[2]

**IT IS FURTHER RECOMMENDED** that all pending motions be **DENIED** as **MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 19th day of October, 2026.

**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**

[2] 8 U.S.C. § 1231(a)(3).